AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No.  '23 MJ00385 |
| *or identify the person by name and address)* | ) | |
| | ) | |
| Black Apple iPhone | ) | |
| | ) | |
| | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 2113(a) | Bank Robbery |
| 18 USC Section 3 | Accessory After the Fact |

The application is based on these facts:

See attached Affidavit of Special Agent Daniel Saavedra, Federal Bureau of Investigation

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Daniel Saavedra*
_____
*Applicant's  signature*

Daniel Saavedra, Special Agent, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephone_____ *(specify reliable electronic means).*

Date:  _____February 2, 2022_____

_____
*Judge's signature*

City and state:  _____San Diego, CA_____

Honorable Karen S. Crawford, U.S. Magistrate Judge
_____
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## **ATTACHMENT A-2**
### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property/item to be searched is described as:

A black Apple iPhone (**Target Phone #2**).

**Target Phone #2** is currently in the possession of FBI and is being held as evidence in the Southern District of California.



# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular phones described in Attachments A-1 and A-2 includes the search of discs, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone(s). The seizure and search of the cellular phone(s) will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular phone(s) will be electronic records, communications, and data including but not limited to emails, text messages, photographs, audio files, videos, and location data, for the period from January 3, 2022 to and including January 20, 2023:

a. tending to indicate efforts to conceal, hide, disburse, deposit, and or move the stolen credit union robbery proceeds;

b. tending to identify digital records of transfer of stolen proceeds in digital ledgers;

c. tending to identify digital receipts of the transfers, withdrawals, and deposits of stolen proceeds;

d. tending to identify text messages, emails, voice calls, and direct messages related to criminal activities to include the movement of stolen proceeds from a robbery;

e. tending to identify communications with co-conspirator's regarding robbery;

f. tending to identify text messages, emails, calls, and direct messages with co-conspirators on or about the day of the credit union robbery, indicating co-conspirators visited locations with stolen proceeds from the robbery;

g. tending to show ownership, control, and users of the devices;

**Which are evidence of violations of Title 18, United States Code, Sections 2113(a); and Title 18, United States Code, Sections 3.**

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR
## A SEARCH WARRANT

I, Daniel Saavedra, being duly sworn, declare and state:

### INTRODUCTION

1.      This affidavit supports an application for a warrant to search the following cellular telephones belonging to Aisha Deliah Daniels (AISHA):

     a. a Motorola cellular telephone with IMEI 359121101112721 (**Target Phone #1**); and

     b. a black Apple iPhone (**Target Phone #2**);

as described in Attachments A-1 and A-2, respectively.

2.      As set forth below, probable cause exists to believe that the **Target Phones** possess evidence of federal offenses, specifically, Bank Robbery, in violation of 18 U.S.C. § 2113(a), and Accessory after the Fact, in violation of 18 U.S.C. § 3, as further described in Attachment B.

3.      This affidavit is submitted for the limited purpose of securing a warrant to search the **Target Phones** such digital evidence. I have not included every fact known to me concerning this investigation. Accordingly, where I refer to conversations and events, I often refer to them in substance and in relevant part rather than their entirety or verbatim, unless otherwise noted. Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal law identified above have occurred, and that evidence of these violations are located on the **Target Phones**. I have based my statements in this affidavit on my training, experience, and personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by witnesses, information provided by other agents and law enforcement officers, and information provided by records and databases.

//

1

TRAINING AND EXPERIENCE

4.      I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

5.      I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the San Diego Division, Imperial County Resident Agency and have been so employed since September 2019. I am assigned to investigate criminal violations of federal law. I have received at the FBI Academy in Quantico, Virginia, including training on criminal procedure, search and seizure, violent crimes, and gang organizations. As an FBI agent, I am authorized to investigate violations of the United States law and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. Prior to my current position as a Special Agent with the FBI, I was a police officer for approximately four years and a gang detective for approximately one year and four months with the Mesa Police Department, in the city of Mesa, Arizona. During the course of my career, both with the FBI and with the Mesa Police Department, I have spoken with, worked with, and gained knowledge from numerous experiences federal, state, and local investigators who have written affidavits for, or participated in, the application for and the execution of hundreds of search and arrest warrants over the course of their careers. I have also personally written several affidavits and executed several search and arrest warrants while performing my duties as a law enforcement officer. During the course of my career, I have participated in the investigation of numerous cases involving fugitives, firearms, narcotics, gang related activities, bank robberies, and other violent crime.

6.      My training and experience as a Special Agent and FBI employee, my participation in a multitude of investigations, and my interactions with other agents,

2

as well as with other state and local law enforcement officers familiar with violent crimes, and form the basis of the opinions and conclusions set forth below, which I have drawn from the facts set forth herein. The facts are set forth in substance not verbatim, unless otherwise notes. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

FACTS SUPPORTING PROBABLE CAUSE

*January 4, 2022 Bank Robbery*

7.     On January 4, 2022, investigators were notified of a bank robbery. They reported to the scene, interviewed witnesses, reviewed surveillance video, and learned that at approximately 10:05 AM, an individual later identified as Asim Shakir DANIELS (AISHA's brother) entered the Bank of the West located at 8690 Center Drive, La Mesa, CA 91942. DANIELS was wearing a black jacket, black shoes, black gaiter neck/face covering, and dark sunglasses. DANIELS walked to a teller window and made an oral demand saying, "give me everything". DANIELS demanded money from the vault but the bank employee informed DANIELS that the location didn't have a vault. DANIELS demanded the money from the employee's drawer and the bank employee working told DANIELS they did not have any money in their drawer. Based on DANIELS' oral demands, two separate bank employees provided DANIELS money from two separate drawers. DANIELS received approximately $2,840.00 USD in cash. DANIELS took the money and left the bank on foot, heading southbound.

8.     Shortly after, La Mesa Police Department (hereinafter, "LMPD") Officers responded to the robbery and found DANIELS at a shopping center located south of the Bank of the West. DANIELS matched the physical description of the robber and was wearing clothing similar in appearance to that of the robber. LMPD

3

detained DANIELS and conducted a curbside lineup where DANIELS was identified as the robber by a bank employee.

9.      LMPD Officers located the money stolen from the Bank of the West on DANIELS' person and DANIELS was identified by his California Driver's License, D2028623, which was also found on his person.

10.     On January 4, 2022, at the time of the robbery, the Bank of the West's deposits were insured by the Federal Deposit Insurance Corporation.

*January 3, 2022 Bank Robbery*

11.     Your affiant also learned, the day before, on January 3, 2022, investigators were notified of a robbery at a bank, responded to the scene and learned the following by interviewing witnesses and reviewing surveillance video. On January 3, 2022, at approximately 11:00 AM, a then unknown black male matching DANIELS description, entered the Sun Community Federal Credit Union located at 100 E. 5th Street, Holtville, CA 92250. The robber was wearing a black jacket, black pants, black shoes, camouflage neck gaiter/face covering, and white rimmed sunglasses.

12.     Upon entering the Sun Community Federal Credit Union, DANIELS approached a teller window and made an oral demand, stating he was robbing "the place" and to "give me that", pointing towards the vault. The bank employees were unable to open the vault during the time of the robbery; however, DANIELS proceeded to take a sum of money from the bank tellers' drawers totaling approximately $20,545.00 USD cash and left the bank on foot.

13.     Based on this individuals appearance, clothing, and method of operation, and DANIELS residing in the area, I believe the bank robber at Sun Community Federal Credit Union to be DANIELS.

*Timeline of Events on January 3, 2022*

14.     Investigators learned DANIELS was staying at a halfway house in

4

Brawley, California, where he was serving the remaining part of a federal sentence for committing bank robberies. Investigators spoke with employees of the halfway house and reviewed records. Investigators learned that DANIELS signed out of the halfway house in Brawley, CA at approximately 4:55 AM. He arrived his place of employment in Brawley, CA at approximately 5:06 AM. DANIELS left his place of employment at approximately 9:15 AM. The vehicle DANIELS was known to drive was spotted via license plate reader (LPR) around Old Highway 111 and B Street in Brawley, CA at approximately 9:35 AM. DANIELS last believed known location was approximately 30 minutes by vehicle from Sun Community Federal Credit Union (SCFCU) in Holtville, CA. At approximately 11:00 AM, a male matching the description of DANIELS robbed SCFCU. At approximately 12:15 PM, DANIELS' known vehicle was identified traveling westbound by the Border Patrol Checkpoint I8. The Border Patrol I-8 checkpoint is approximately 1 hour and 6 minutes from SCFCU in Holtville by vehicle. At approximately 2:55 PM, DANIELS vehicle was identified traveling eastbound by Border Patrol I-8 checkpoint. DANIELS arrived back at his residence at approximately 5:00 PM. Investigators later learned during the execution of a court authorized search warrant on DANIELS cellular telephone, on January 3, 2022 at approximately 6:51 PM, the same day of the SCFCU robbery in Holtville, DANILES conducted several internet searches regarding the robbery.

*Identification of DANIELS Cellular Device/Account*

15.     Upon the arrest of DANIELS by LMPD, officers located car keys on his person. A search for the vehicle revealed the car keys belonged to a gray 2020 Nissan Versa, bearing California license plate 8LZK013, which was in the area near where DANIELS was arrested. The Nissan Versa was secured and towed to the LMPD property. DANIELS was also in the possession of a Geico insurance card showing him as the insured person for the Nissan Versa.

16.     On January 4, 2022, agents interviewed DANIELS and he identified his

phone number as 619-278-8110.

17. On January 4, 2022, agents executed a search warrant at DANIELS' residence. Employees at the halfway house confirmed DANIELS had a black Samsung cellular phone, telephone number 619-278-8110.

18. On January 5, 2022, Agents met with DANIELS employer who confirmed DANIELS phone number was 619-278-8110.

19. On August 25, 2022, United States Magistrate Judge, the Honorable Michael S. Berg, signed and authorized a search warrant for records associated with T-Mobile number 619-287-8110.

*AISHA's Relationship to DANIELS*

20. Investigators learned during the arrest of DANIELS and through DANIELS' audio recorded jail calls that AISHA and DANIELS are brother and sister. Investigators also learned that DANIELS has a brother, Akil Daniels, who was a co-defendant to DANIELS in his previous federal bank robbery case.

*Cellular Analysis of Phone Number 619-278-8110*

21. On January 3, 2022, the first account activity was in Brawley, California, consistent with the area of where DANIELS worked and lived. The last activity in the Brawley area that morning was at approximately 9:11 AM. Brawley is approximately 21 miles northwest of SCFCU in Holtville, California. At approximately 11:33 AM, the account activity was showed DANIELS' cell phone to be located in the area approximately 25 miles west of SCFCU, consistent with the drivetime from the robbery at SCFCU. At approximately 12:00 PM, an outgoing call from 619-278-8110 was made to 619-300-6322, AISHA's phone number. At approximately 12:15 PM, DANIELS vehicle was photographed by U.S. Border Patrol I-8 checkpoint traveling westbound, consistent with the account activity and drivetime from SCFCU. From approximately 1:22 PM and 1:53 PM, account activity was in the area of 2915 Menlo Avenue, San Diego, California (AISHA's

Residence). During that time, there were incoming and outgoing calls between 619-278-8110 and AISHA's phone number. Shortly after, the account activity showed travel back to the area of Brawley that same day.

Identification of AISHA's Residence

22.     Investigators learned via law enforcement data base checks, bank records, Western Union history, jail transactional data, and physical surveillance at 2915 Menlo Avenue, San Diego, California belongs to AISHA. On December 22, 2022, investigators observed a vehicle bearing California license plate, 7FYZ588 parked at the residence. Registration checks showed the vehicle owner to be AISHA. That same day, another vehicle was seen at AISHA's Residence bearing California license plate 8TNF478. Registration checks showed the vehicle owner to be AISHA. On January 5, 2023, investigators observed the vehicle bearing California license plate 8TNF478 at AISHA's Residence. Later that day, investigators observed the vehicle bearing California license plate 7FYZ588 arrive at AISHA's Residence and AISHA exited the vehicle and entered 2915 Menlo Avenue.

*Money Transfers to DANIELS' Jail Account*

23.     Investigators later learned via jail records, while DANIELS was in custody, AISHA, via Western Union, made several wire transfers of money to DANIELS's jail account for a combined total of approximately $6,000.00 USD. Theses transfers included $1,000.00 USD on January 18, 2022, $1,000.00 USD on March 27, 2022, and $6,000.00 USD on April 11, 2022.

*Jail Calls between DANIELS and AISHA*

24.     Since DANIELS arrest and incarceration on January 4, 2022, the AISHA has been in contact with him via email and or jail phone conversations. During their phone conversations, money and investments are consistently talked about. A jail call that occurred on January 17, 2022, AISHA told DANIELS she

will be putting money on his books and DANIELS responds with a "G". Investigators know that a "G" is commonly used in substitute of a grand when talking about money. As noted previously in this affidavit, AISHA did in fact transfer $1,000.00 USD to DANIELS's jail account the next day, January 18, 2022. During a jail call that occurred on August 8, 2022, DANIELS asked AISHA how much of "that" is left, not the exact number, but around what it is. AISHA responded that she hadn't counted it lately but, had been doing all the negatives, like what DANIELS had asked for, what Akil (DANIELS' brother) got, she had to do the quick math, but she did not have her little book with her, but basically whatever DANIELS' had taken. AISHA followed up with something to the effect of, you was at three right? DANIELS responds with nah, all together that was like six. DANIELS confirmed he got six and bro got three. AISHA responded, ok, that's six, seven, eight, nine, that's minus you know, so that's what should be, but I can verify. The conversation was followed up with talk about investing. Towards the end of the conversation, AISHA said something to the effect of, so I'm thinking about with the math and stuff, it should be at about 11, I'll confirm it.

25.    On January 3, 2022, DANIELS robbed SCFCU of $20,545.00 federally insured USD. Cellular analysis shows he immediately traveled to the area of AISHA's Residence and contacted the AISHA several times via phone. On August 8, 2022, AISHA and DANIELS had a phone conversation regarding what investigators believed to be money. During that conversation, AISHA and DANIELS confirm that $9,000.00 USD was transferred or disbursed among DANIELS and Akil, and that $11,000.00 USD should be left. This amount of $11,000.00 USD is consistent with the amount of money that should be left if you minus the $9,000.00 USD from the $20,545.00 USD that was robbed from SCFCU on January 3, 2022. Further, as described above, investigators searched DANIELS' vehicle and residence at the halfway house and did not recover the money stolen

from SCFCU.

### *Identification of AISHA's Phone Numbers*

26.    Throughout the investigation, investigators learned phone numbers 619-300-6322 and 619-602-5542 were associated with AISAH via law enforcement database checks, bank records, Western Union history, and jail calls/transactional data. During DANIELS January 4, 2022, post arrest interview, he was allowed to make a phone call in front of investigators in which he called 619-300-6322. Investigators learned from reviewing DANIELS jail transactional data while incarcerated, AISAH has sent known amounts of money to DANIELS' jail account with 619-300-6322 listed as their phone number and their address listed as AISHA's Residence. Investigators also learned via transactional data from the jail 619-300-6322 is associated with the contact name of "Lil Lady Dan". "Lil Lady Dan" is also associated to the contact number of 619-602-5542 and the email of "ish2isha@gmail.com" on DANIELS' jail calls/transactional data. The email isha2isha@gmail.com was confirmed to belong to AISHA via bank records. Based on my training and experience, I know people involved in criminal activity often use aliases to make jail calls or correspond with inmates to mask their true identities from law enforcement. Since DANIELS has been in custody, he has made several calls to 619-300-6322 and 619-602-5542. Investigators reviewed these calls and in several of them the female voice, believed to be AISHA said things to the effect of, hey little bro and DANIELS would respond with, hey big sis. Based on the information known, I believe the two mentioned phone numbers belong to AISHA.

### *Identification of the **Target Phones***

27.    On January 20, 2023, investigators executed  federal search warrants authorizing them to search AISHA and her residence at 2915 Menlo Avenue. AISHA lives at the residence with her adult son, M.D. Both were home at the time of the residential search. During the search of AISHA's residence, investigators

found two cellular phones. **Target Phone #1** was in a bedroom identified as AISHA's. The bedroom **Target Phone #1** was found in had adult female clothing, women's purses, wallets, women's shoes, and a variety of nail polishes throughout the room. Inside the case of **Target Phone #1**, was a North Island Credit Union visa debit card bearing the name Aisha D. Daniels. AISHA's person was searched pursuant to a federal warrant and she was not carrying a cell phone. AISHA told investigators her cell phone was located in her bedroom.

28.    **Target Phone #2** was found in the living room on the couch. Prior to M.D. leaving the scene, he asked investigators for his phone. M.D. told investigators his phone was on the living room couch. When investigators brought out **Target Phone #2**, which was located on the couch, M.D. said that was his AISHA's work phone. Investigators went back inside and grabbed a second phone which was located on the couch and confirmed to belong to M.D. via phone number.

## BASIS FOR THE EVIDENCE SOUGHT

29.    Based on the above investigation, my training and experience, and speaking with other experienced bank robbery investigators, I'm aware people involved in bank robberies tend to do and maintain the following;

a.    Maintain records of the transfer of stolen proceeds on their phones and or any other electronic devices.

b.    Maintain digital records of the transfer of stolen proceeds in digital ledgers.

c.    Maintain digital receipts of the transfers, withdrawals, and deposits of stolen proceeds.

d.    Maintain text messages, emails, and direct messages related to criminal activities to include the movement of stolen proceeds form bank robbery.

e. Communications with co-conspirator's regarding the bank robbery.

10

PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

30.    It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.  Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

31.    Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

32.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

CONCLUSION

33.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

34.     Based upon my training and experience, consultation with other law enforcement officers experienced in robbery investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Phones,** as described in Attachment A-1 and A-2 will contain evidence of Bank Robbery, in violation of 18 U.S.C. § 2113(a), and Accessory after the Fact, in violation of 18 U.S.C. § 3, as set forth in the Attachment B. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another law enforcement agent, to search the **Target Phones**.


_Daniel Saavedra_
Daniel Saavedra
Special Agent
Federal Bureau of Investigation


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 1st day of February, 2023.


Hon. Karen S. Crawford
United States Magistrate Judge